FILED

**NOT FOR PUBLICATION**

MAR 25 2011

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KLAMATH SISKIYOU WILDLANDS CENTER; ENVIRONMENTAL PROTECTION INFORMATION CENTER; KLAMATH FOREST ALLIANCE; CENTER FOR BIOLOGICAL DIVERSITY, | No. 10-17347 <br><br> D.C. No. 2:10-cv-02350-GEB-CMK <br><br> MEMORANDUM[*] |
| Plaintiffs - Appellants, | |
| v. | |
| PATRICIA A. GRANTHAM, Klamath National Forest Supervisor; UNITED STATES FOREST SERVICE, | |
| Defendants - Appellees, | |
| ROUGH AND READY LUMBER, LLC; SOUTH BAY TIMBER, LLC, | |
| Intervenor-Defendants - Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

                *       This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Argued and Submitted March 16, 2011
San Francisco, California

Before: NOONAN, FERNANDEZ, and CLIFTON, Circuit Judges.

Plaintiffs appeal the district court's denial of their motion for preliminary injunction to halt post-fire salvage logging in Klamath National Forest. We affirm.

## I. Standard of Review for a Preliminary Injunction

At the outset, we note that the standard of review for the denial of a preliminary injunction is deferential, as is our review of the agency's decision. A court may set aside only agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010). "A district court abuses its discretion in denying a request for a preliminary injunction if it bases its decision on an erroneous legal standard or clearly erroneous finding of fact." *Id.*

Because we conclude the district court did not abuse its discretion in concluding that Plaintiffs failed to raise serious questions going to the merits of their claims, we need not reach whether Plaintiffs would have prevailed on the remaining elements for a preliminary injunction. *See Alliance for the Wild Rockies v. Cottrell*, —F.3d —, 2011 WL 208360 (9th Cir. Jan. 25, 2011); *Doe v. Reed*, 586 F.3d 671, 681 n.14 (9th Cir. 2009).

2

## II. National Forest Management Act

The district court's conclusion that Plaintiffs did not raise serious questions going to the merits of their National Forest Management Act (NFMA) claim was not an abuse of discretion.

First, the Forest Service's determination that logging and replanting trees was beneficial to several Aquatic Conservation Strategy (ACS) objectives and would achieve recovery faster than would natural regeneration was not "likely" arbitrary or capricious. In fact, the Forest Service submitted reports indicating that relying on natural regeneration would delay conifer regeneration and allow competitive species an opportunity to take over the project area. An agency's scientific conclusion that active replanting would hasten recovery by decades is entitled to deference. *See League of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122, 1131 (9th Cir. 2010). Further, according to Forest Service reports, this replanting could not take place without logging, and therefore Plaintiffs' argument that the Forest Service failed to evaluate the environmental costs of logging is unavailing.

Second, we are not convinced that the Forest Plan must be read so narrowly as to allow only activities required to prevent failure of ACS objectives. The Forest Plan appears to contemplate a broader approach than what Plaintiffs

3

suggest. *See Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv.,* 265 F.3d 1028, 1036-38 (9th Cir. 2001) (evaluating whether a proposed project was "consistent" with the ACS objectives); *Or. Natural Res. Council Fund v. Goodman*, 505 F.3d 884, 893-94 (9th Cir. 2007) (emphasizing that the Riparian Reserve guidelines "prohibit or regulate activities in Riparian Reserves that retard or prevent attainment of the [ACS] objectives"). Accordingly, the Forest Service's interpretation of its own Forest Plan was not arbitrary or capricious, or plainly inconsistent with the regulations. *See Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005).

Third, the single article Plaintiffs cite for the value of natural conifer regeneration appears inapposite to a situation where, as here, the fire itself has apparently destroyed the bulk of the natural bank of seeded conifers. To the extent Plaintiffs' rely on the Third Declaration of George Sexton, that declaration is stricken as not part of the record on appeal. *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990).

Fourth, contrary to Plaintiffs' assertion that the court may look no further than the Elk Creek Watershed Analysis, the Forest Plan does not preclude the Forest Service from using a variety of reports to evaluate coarse woody debris. Concerning these reports, the court's "highest deference is owed to the Forest

4

Service's technical analysis and judgments within its area of expertise." *League of Wilderness Defenders*, 615 F.3d at 1131. The district court did not abuse its discretion in ruling that the Forest Service adequately supported with scientific research its evaluation that the course woody debris needs were met.

## III. National Environmental Policy Act

The district court did not abuse its discretion in concluding that Plaintiffs did not raise serious questions as to whether the existence of any "significance factor" warranted an Environmental Impact Statement (EIS) pursuant to the National Environmental Policy Act.

While Plaintiffs may have arguably established that the Riparian Reserves are ecologically critical areas, Plaintiffs failed to explain how the project would have a "significant effect" on them. 40 C.F.R. § 1508.27(b)(3). Proximity of a project to a sensitive area does not *per se* warrant an EIS. *See Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1162 (9th Cir. 1998) (EIS not required despite the project's proximity to historical resources). "[I]t does not follow that the presence of some negative effects necessarily rises to the level of demonstrating a significant effect on the environment." *Native Ecosystems Council*, 428 F.3d at 1240. Nor have Plaintiffs identified "significant controversies as to the efficacy of

the Service's proposed methods." *Hapner v. Tidwell*, 621 F.3d 1239, 1245 (9th Cir. 2010).

For the reasons set forth above, Plaintiffs have also not demonstrated a likelihood of success on their claim that there is a threatened violation of NFMA. *See* 40 C.F.R. § 1508.27(b)(10).

## IV. Appeal Reform Act

With respect to the Forest Service's emergency situation determination (ESD) to forego the automatic stay pending the administrative appeal, Plaintiffs fail to raise serious questions going to the merits of their claim.

The Forest Service Chief was authorized to make an ESD after the Forest Service determined that the immediate implementation of the Project was necessary for "for relief from hazards threatening human health and safety" and to avoid "substantial loss of economic value to the Federal Government."  36 C.F.R. §§ 215.2, 215.10(a).  Here, the Forest Supervisor concluded there was "a very high likelihood of serious injury or death if a tree were to fall on a car or a person." Plaintiffs do not dispute the risk *per se*, but instead suggest the court require an alternative method for minimizing safety hazards.  Under the Administrative Procedure Act, a court is not permitted to simply substitute its judgment for that of

6

the agency.  *See N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1152-53 (9th Cir. 2008).

The court did not err in distinguishing *Wild Rockies* when it concluded that the Forest Service might obtain an ESD to avoid substantial loss of economic value.  The amount at issue here is more than double that in *Wild Rockies*, and the Forest Service did not, in this case, erroneously include the local economy in its ESD as it had in *Wild Rockies*.  2011 WL 208360, at *10.

Finally, during oral argument on these matters, counsel informed the court that the administrative appeal had ended, and any stay that might have been in place would have since been lifted.  It is therefore unclear at this stage what remedy would be available to Plaintiffs with respect to their ARA claim.

**AFFIRMED.**